Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Plaintiff
LINK FREEDOM GROUP LTD.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINK FREEDOM GROUP LTD., a Malta limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>EASYGROUP LTD, a UK limited company,<br><br>Defendant. | Case No. 26-10760<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## NATURE OF THE ACTION

1. This is a declaratory judgment action under 28 U.S.C. § 2201 brought by Plaintiff LINK FREEDOM GROUP LTD. (“LFG”) against Defendant EASYGROUP LTD (“EASYGROUP”).

2. The dispute centers on EASYGROUP’s attempts to circumvent the internationally recognized authority of the Internet Corporation for Assigned Names and Numbers (“ICANN”) to award generic Top-Level Domain (“gTLD”) names to competing applicants around the world by asserting baseless allegations that LFG’s application for operation of a “.easy” Top-Level Domain will violate the Lanham Act, 15 U.S.C. §§ 10151 *et seq*.

3. ICANN is a California-based nonprofit that ensures the stability and security of the Internet’s unique identifier systems by helping coordinate unique identifiers—domain names that function as a virtual address book. As part of this work, ICANN coordinates the Domain Name System (“DNS”) and manages Internet domain names, numbers, and protocol assignments

4. Domain name registries are domain name wholesalers; they provide second-level domains to “domain name registrars,” which then act as retailers and provide domain name services for individual, second level domain names to entities and individuals, who are labeled “registrants.” For example, Verisign, Inc., is the registry for the “.com” gTLD; it provides registrars like GoDaddy Inc. or Name.com, Inc. access to the “.com,” gTLD. These registrars in turn provide domain name services for second level domains to “registrants.”

5. Entities wishing to serve as a “domain name registry” for a particular gTLD name, like “.data” or “.book,” can submit an application to ICANN.

6. In submitting an application for a domain name registry, entities agree to be bound by ICANN's rules. Among other things, those rules authorize ICANN to resolve disputes involving allegations that a domain name infringes a trademark through mandatory administrative proceedings. The ICANN rules are crystal clear. Arbitration under the ICANN rules is the exclusive vehicle for resolving disputes involving a gTLD application submitted to ICANN—not the courts.

7. ICANN's dispute resolution provisions directly benefit all applicants that elect to participate in the gTLD application process. By channeling disputes concerning gTLD applications, trademark rights, and related legal claims into a single, uniform dispute resolution framework, those provisions provide applicants with a predictable and consistent mechanism for resolving disputes arising from competing applications. The provisions thereby protect applicants from the uncertainty, expense, and risk of conflicting outcomes that could result from parallel litigation in multiple jurisdictions and, in turn, promote the stability and security of the Internet's unique identifier system.

8. Indeed, a central purpose of ICANN's dispute resolution framework is to ensure the consistent, coherent, and uniform resolution of disputes involving gTLD applications across jurisdictions. ICANN adopted the framework to provide all applicants with a common set of rules governing such disputes, and applicants further that purpose when they agree, as a condition of participation in the application process, to be bound by those rules. Thus, both ICANN and participating applicants enter into the dispute resolution agreement with the expectation that it will benefit other applicants by requiring application-related disputes to be resolved within a single, uniform system.

9. LFG applied to ICANN to be the domain name registrar for the ".easy" generic Top-Level Domain. So did EASYGROUP. In so doing, both LFG and EASYGROUP entered into a contractual relationship with ICANN in California, both agreed to abide by the terms and conditions of the gTLD application process, and both agreed to resolve disputes about gTLD applications through ICANN's binding dispute resolution procedures.

10. Instead of participating in those procedures, allowing ICANN to award the ".easy" gTLD registry, and submitting any resulting dispute to arbitration, EASYGROUP has threatened LFG with trademark infringement litigation if LFG proceeds with pursuit of its application.

11. EASYGROUP specifically asserts that any distribution, sale, or use of a ".easy" domain, by LFG or its customers, will result in LFG being held liable for direct and contributory trademark infringement and EASYGROUP demands that LFG abandon its application for the ".easy" gTLD.

12. LFG thus faces a Hobson's choice: abandon an application that it devoted substantial money, time, and resources into developing, or face trademark litigation even if ICANN awards it the ".easy" registry.

13. EASYGROUP, by its threats and demands, is attempting to circumvent the ICANN process, tortiously interfere with LFG's application, and evade its contractual commitment to resolve application-related disputes through ICANN's exclusive dispute-resolution mechanisms. That commitment exists precisely to ensure that competing applicants can rely on a uniform and predictable process for resolving disputes concerning gTLD applications, rather than being subjected to fragmented litigation across multiple jurisdictions.

14. More galling, EASYGROUP's trademark infringement claims are utterly lacking in merit. Under settled law, the mere act of serving as a registry for a gTLD cannot trigger liability for trademark infringement. The ".easy" gTLD can be used in a variety of non-infringing contexts, such as for goods and services unrelated to EASYGROUP's asserted trademarks. Moreover, LFG, as the wholesaler, cannot control or be held liable for any infringing use by the retailers and end-users.

15. Accordingly, LFG seeks a declaration that EASYGROUP's trademark claims must be resolved in arbitration or, alternatively, that LFG's application for and any award of the ".easy" gTLD registry does not infringe EASYGROUP's trademarks.

## **PARTIES**

16. Plaintiff, LINK FREEDOM GROUP LTD. ("LFG") is a limited liability company organized in Malta, with its principal place of business at Avenue 77, Triq in-Negozju, Zone 3, Central Business District, Birkirkara, CBD 3010, Malta.

17. Defendant, EASYGROUP LTD. ("EASYGROU") is a limited company organized in the United Kingdom. On information and belief, its principal place of business is at 168 Fulham Road, London, SW10 9PR, United Kingdom.

## **JURISDICTION AND VENUE**

18. This action arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") art. II(1), Jun. 10, 1958, 21 U.S.T. 2517, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 201-208, the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, the Declaratory Judgment

Act, 28 U.S.C. § 2201, and California law.

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(2), 1338(a), 15 U.S.C. § 1121, and 9 U.S.C. § 203.

20. This Court has supplemental subject matter jurisdiction over the California state law claims pursuant to 28 U.S.C § 1367 because these claims derive from the same common nucleus of operative fact as the federal claims and therefore form part of the same case or controversy.

21. This Court has personal jurisdiction over EASYGROUP under California's long-arm statute. Cal. Civ. Proc. Code § 413.10.

22. By applying for the ".easy" gTLD through ICANN, EASYGROUP has purposefully entered a contractual agreement with ICANN, a California public benefit corporation headquartered in this District, to participate in a process which will ultimately determine the owner of the ".easy" gTLD.

23. In the alternative, this Court has jurisdiction under Fed. R. Civ. P. 4(k) because at least one of LFG's claims arise under federal law; EASYGROUP has minimum contacts with the United States through its provision of services to customers in the United States as confirmed by its numerous sworn statements of use filed with the U.S. Patent and Trademark Office, its threat to assert its U.S. trademark registrations against LFG, its frequent trademark litigation in U.S. Courts; and "exercising jurisdiction is consistent with the United States Constitution and laws." *See* Fed. R. Civ. P. 4(k)(2)(B).

24. Venue is proper in this District pursuant to 9 U.S.C. § 204, 28 U.S.C. §§ 1391(b)(1) and (c)(3), 1391(b)(2), and 1391(d).

## GENERAL ALLEGATIONS

### I. The ICANN Framework for Domain Name Registration

25. The internet addressing system relies on the unique assignment and management of Top-Level Domains ("TLDs"), with which internet users are acquainted with in the form of the characters immediately following a dot in, for example, email addresses and website addresses. Prominent examples of TLDs include ".com," ".net," and ".gov."

26. Administration and management of the authoritative assignment of TLDs is vested by international consensus among internet infrastructure providers, civil society, governments, and technologists in ICANN, which has its principal office in this Judicial District at 12025 Waterfront Drive, Suite 300, Playa Vista, California.

27. ICANN delegates operation of each of the TLDs to organizations denominated "registries" who may further contract with others to provide essential domain registry operations.

28. Some of the TLDs delegated by ICANN are administered on behalf of national communities, such as .uk on behalf of the United Kingdom, and .mx on behalf of Mexico. Other TLDs assigned by ICANN are so-called "generic top-level domains," or "gLTDs" which are delegated to independently-operated registries.

29. In 2026, for the first time in fourteen years, ICANN announced it would receive applications for new gTLDs within an application window running from April 30, 2026, and closing August 12, 2026.

30. The authoritative rules for the ICANN gTLD application process are set forth and governed by ICANN's "New gTLD Program: 2026 Round Applicant

Guidebook" ("ICANN AGB"). The version now in effect is dated April 24, 2026. A true and correct copy of the ICANN AGB is attached hereto as Exhibit A.

31. The ICANN AGB requires all applicants, as a condition of applying for a gTLD, to agree that the terms of the application shall be subject to the law of the State of California.

32. The ICANN AGB also requires that, "in filing an application or an objection, the applicant or objector respectively agree to accept the applicability of the Guidebook, the ICANN Objection and Objection Appeal Procedures, and the DRSP Rules." Ex. A, ICANN AGB 4.5 at p. 98; *see also id.* at App'x 3 p. 348 ("By filing an Application . . . . an Applicant . . . accept[s] the applicability of this Procedure, the 2026 Round Applicant Guidebook, and the applicable DRSP's Rules").

33. After receiving a gTLD application, ICANN conducts an extensive review of the application, conducts background investigations of the applicants, receives public comments, requests further information from the applicant if required, and administers a comprehensive evaluation process.

34. The ICANN AGB also establishes a comprehensive dispute resolution scheme, the ICANN Objection and Objection Appeal Procedures. These procedures provide an exclusive forum for the resolution of disputes premised on "legal rights," including allegations that an applied-for gTLD would constitute trademark infringement. *See* Ex. A, ICANN AGB 4.5.2.2 at 103 (detailing which entities have standing to raise a legal rights objection, including trademark holders); *see also* 4.5.10.2.2 at 124 (enumerating the principles used to adjudicate "trademark-based objections.").

35. Pursuant to these procedures, any objection to the allocation of a gTLD is "reviewed by a panel of expert(s) designated by the applicable Dispute Resolution Service Provider ("DRSP"). *Id.* 4.5.2 at 102. Rights holders—including "a trademark holder of a registered mark" have standing to file a "Legal Rights Objection." *Id.* § 4.5.2.2 at 103 & n.126.

36. Legal Rights Objections must be brought by the posted deadline date with the World Intellectual Property Organization ("WIPO"), which is the designated DRSP for objections pertaining to legal rights—including alleged trademark infringement. *Id.* § 4.5.3 at 104.

37. The WIPO "shall select and appoint the Panel" to decide the objection. *Id.* App'x 3, Art. 12.a at 354.

38. The Panel's determination can be appealed—but only through ICANN's framework. An Appeal "provides a one-time basis for all relevant parties to challenge a Panel Determination" on an enumerated set of grounds. *Id.* App'x 3, at 362. Appellate Panel Determinations are "final" and "not subject to further Appeal." *Id.* at 372.

39. In addition to setting forth comprehensive rules governing the resolution of disputes involving legal rights, the ICANN AGB further prohibits communications between applicants in a "contention set" for the purpose of private resolution of contending applications for the identical gTLD, on penalty of disqualification and permanent prohibition from future applications.

40. The ICANN AGB thus sets forth a comprehensive framework for resolving disputes involving alleged trademark infringement that governs when proceedings can be brought and how they will be adjudicated within the application

evaluation process. That framework is intended to provide all applicants with a predictable, uniform, and exclusive mechanism for resolving disputes arising from competing gTLD applications, thereby protecting applicants from the uncertainty and inefficiency of parallel proceedings in multiple jurisdictions.

41. ICANN has, in short, constructed a closed contractual ecosystem between registry applicants and ICANN within this Judicial District. In this ecosystem, ICANN controls the rules governing the award of domain name registries, the procedures for challenging those awards, and the forum in which such challenges must be heard. Participation in the system is conditioned upon acceptance of those rules, including acceptance of binding arbitral mechanisms designated by ICANN itself.

42. The resulting dispute-resolution framework is not designed solely for ICANN's benefit. Rather, it reflects a reciprocal undertaking among applicants that disputes concerning competing legal rights to gTLD applications will be resolved through a common set of procedures and is designated for ensuring that all applicants may rely on a consistent, uniform, and orderly process.

43. The closed nature of the system is integral to the functioning of the world wide web. The internet requires a single authoritative voice to administer a global namespace, and ICANN's framework accordingly is designed to ensure that disputes are resolved within a uniform system rather than by a patchwork of courts and regulators applying potentially conflicting standards.

44. Permitting applicants to enforce the dispute-resolution obligations undertaken by other applicants as part of that framework furthers those objectives and is consistent with the reasonable expectations of both ICANN and participating

applicants, all of whom agreed that application-related disputes would be resolved within the system ICANN established.

45. During the 2026 application window, both EASYGROUP and LFG submitted applications to operate ".easy" as a gTLD registry. As such, EASYGROUP and LFG are each bound to use ICANN's dispute resolution process to resolve disputes involving competing applications for gTLDs.

46. That exclusive dispute resolution regime was established for the benefit of all applicants. LFG is therefore an intended third-party beneficiary of EASYGROUP's agreement to comply with ICANN's dispute-resolution requirements, just as EASYGROUP is an intended beneficiary of LFG's reciprocal undertaking.

## II. **LFG's gTLD Application for the ".easy" gTLD Does Not Violate Trademark Law**

47. "Easy" is an adjective denoting ease, simplicity or facilitating rapid understanding.

48. LFG believes the ".easy" domain name will be a desirable gTLD for entities seeking an internet address communicating this concept of "ease" or "simplicity," consistent with the plain and ordinary meaning of the term.

49. LFG has no intention of using the gTLD ".easy" or any form of the word "easy" as a trade or service mark. LFG has applied to become a gTLD registry. By definition, the operation of a gTLD registry requires that the gTLD string be made available for lawful use by registrants whose domain names incorporate that string as their top-level domain.

50. A gTLD registry such as LFG's proposed .easy registry, unlike special

purpose or chartered TLDs restricted to a particular community of registrants, does not select who may register domain names within a gTLD, does not control the quality or selection of goods or services that may be provided by domain name registrants within the gTLD, and is not the source or origin of goods and services provided by users of the gTLD.

51. Thus, operating a gTLD registry inherently does not constitute the use of the gTLD string as a trade or service mark of the registry. Indeed, the entire point of the registry is to encourage use of the gTLD string by unrelated domain registrants for whatever lawful purposes such registrants see fit.

52. It follows that the operation of a gTLD registry such as that proposed in connection with the primary meaning of a dictionary word like ".easy" cannot constitute trademark infringement.

53. Consistent with these principles, LFG's application does not include any restrictions on who may register and use domain names in the proposed ".easy" gTLD.

## III. LFG Invested Substantially In the gTLD Applications

54. LFG's application to ICANN was a significant investment and undertaking. The ICANN application fee alone is US $227,000, and the preparation and filing of the application required LFG to engage specialized consultants and service providers at a cost rivaling that of the application fee.

55. LFG has invested more than US $227,000 in its application to ICANN.

56. Subsequent to the close of the ICANN application window, on or about August 13, 2026, LFG publicly announced that it had applied to ICANN for delegation of the ".easy" gTLD to generate public interest in its application among

potential future domain registrants, to attract potential investment or marketing partners, and to gauge public response generally as the application process goes forward.

57. LFG has premised several business dealings and prospective contractual relationships on the acquisition of gTLDs, including the ".easy" gTLD. These relationships and the economic advantage that LFG expects to derive from them have been disrupted by the uncertainty created by EASYGROUP.

## IV. <u>EASYGROUP'S OVERREACHING AND UNTENABLE CLAIMS</u>

58. EASYGROUP claims ownership of various US trademark registrations and foreign equivalents thereof which incorporate the term "easy" in various forms of representation and under which EASYGROUP claims exclusive rights in the use of such forms of the word "easy" when used as a trademark.

59. EASYGROUP has a history of making untenable claims to the effect that any use of the word "easy" in an internet domain name constitutes a violation of its trademark rights.

60. EASYGROUP's expansive claims concerning its rights to internet domain names have been repeatedly denied in proceedings under the ICANN Uniform Domain Name Dispute Resolution Policy. These denials have included:

**Easygroup Ltd v. Saber Chowdhury et al.**
WIPO Case No. D2019-1275
<easyfly-express.com> - Complaint Denied
<https://www.wipo.int/amc/en/domains/decisions/text/2019/d2019-1275.html>

**easyGroup Limited v. Easy Group Holdings Limited**
WIPO Case No. D2014-2128
<easygroup.com> - Complaint Denied

<https://www.wipo.int/amc/en/domains/decisions/text/2014/d2014-2128.html>

**Easygroup IP Licensing Limited v. The Carphone Warehouse Limited**
WIPO Case No. D2005-0477
<ezeemobile.com> - Complaint Denied
<https://www.wipo.int/amc/en/domains/decisions/html/2005/d2005-0477.html>

**Easygroup (UK) Limited et al. v. Rencross Technology Limited/Michael Kong**
WIPO Case No. D2000-0950
<easycrossing.com> - Complaint Denied
<https://www.wipo.int/amc/en/domains/decisions/html/2000/d2000-0950.html>

**Easygroup (UK) Limited et al. v. Easymaterial.com Limited**
WIPO Case No. D2000-0711
<easymaterial.com> - Complaint Denied
<https://www.wipo.int/amc/en/domains/decisions/html/2000/d2000-0711.html>

61. For example, in WIPO Case No. D2014-2128, cited above, EASYGROUP was found to have engaged in reverse domain hi-jacking, a species of abuse of process under the ICANN domain dispute policy in connection with its rejected claim that inclusion of “easy” in the subject domain name of that proceeding violated EASYGROUP’s claimed rights in an “EASY” trade or service mark.

62. On or about August 18, 2026, EASYGROUP posted an announcement to its website at <https://easy.com/easygroup-applies-to-icann-for-the-easy-top-level-domain-as-part-of-the-new-gtld-program-2026-round>:

> “easyGroup Ltd, the creator and owner of the easy family of brands (see www.easy.com and www.easyHistory.info), today

> announced that it has submitted an application to ICANN for the .easy top-level domain (TLD) as part of the New gTLD Program 2026 Round."

63. As a consequence of EASYGROUP's announcement, LFG reasonably believes that EASYGROUP has submitted a contending application for a ".easy" gTLD to ICANN in this Judicial District. As a result, EASYGROUP has agreed to the contractual terms by which EASYGROUP is required to utilize ICANN's Objection and Objection Appeals Procedures as the exclusive forum for trademark disputes. Among other things, those procedures require EASYGROUP to refrain from communications with other applicants in a "contention set" for the purpose of privately resolving disputes.

64. Due to LFG's announcement, EASYGROUP became aware that LFG and EASYGROUP are contending for the same gTLD. Under ICANN's rules and the terms of EASYGROUP's agreement with ICANN, EASYGROUP is thus prohibited from communicating with LFG to seek the private resolution of a "contention set." EASYGROUP is further required to submit any dispute about the proper allocation of the ".easy" gTLD—including any disputes related to alleged trademark infringement—to arbitration under ICANN's rules.

65. In defiance of these obligations, EASYGROUP directed a letter to LFG dated August 24, 2026 attached as Exhibit B. The letter demands that LFG "withdraw [its] application for the .easy TLD . . . by or before 9 September 2026."

66. EASYGROUP's demand letter alleges that it owns significant trademark rights in the United States and abroad, and claims that such rights in the United States and abroad entitle it to enjoin operation of a ".easy" gTLD registry

by anyone other than itself. These are precisely the determinations committed to ICANN pursuant to the ICANN application process.

67. EASYGROUP's demand letter identifies 20 U.S. federal trademark registrations as providing support for EASYGROUP'S allegations of trademark infringement against LFG. EASYGROUP's demand letter also identifies 25 pending U.S. trademark applications even though pending trademark applications confer no substantive rights under the Lanham Act.

68. EASYGROUP's wide ranging allegations of infringement of U.S. trademarks range from assertion of the mark STELIOS to the mark EASYHOSTEL.COM PART OF THE EASY FAMILY OF BRANDS (and Design). *See* Exhibit B.

69. EASYGROUP does not assert that it possesses trademark rights in association with the operation of a domain name registry or domain name registrar. *See id.*

70. Despite well-established, settled applicable law, EASYGROUP's demand letter alleges that operation of a ".easy" gTLD registry by LFG is a per se violation of its claimed trademark rights, and that the use of any domain name utilizing a ".easy" gTLD would be a violation of its rights to which LFG would be a contributory infringer. *See id.*

71. EASYGROUP threatened that, if LFG does not withdraw the ".easy" application that LFG has filed with ICANN in this Judicial District, EASYGROUP "has a very substantial brand protection budget and it will not hesitate to use it to protect its intellectual property rights" including by seeking to enjoin LFG's application anywhere "in the world." *See id.*

72. EASYGROUP invited LFG to reply to its demand letter, despite the prohibition on communications between parties in a "contention set" as set forth in the parties' respective contracts with ICANN. *See id.*

73. EASYGROUP has thus placed LFG in an impossible position. LFG invested substantial time, resources, and effort in its application. EASYGROUP demands that LFG abandon its efforts or risk the real and immediate threat of litigation anywhere in the world.

74. In so doing, EASYGROUP has violated the terms of its contractual obligation to ICANN to refer disputes regarding gTLD awards to arbitration and undermined the very purpose of ICANN' exclusive dispute-resolution framework: ensuring that competing applicants resolve application-related disputes through a uniform and predictable process rather than through fragmented litigation across multiple jurisdictions.

**COUNT I**
**Declaratory Judgment that EASYGROUP's Claims Are Subject to Arbitration**

75. LFG repeats and realleges the foregoing paragraphs as if set forth fully herein.

76. EASYGROUP and LFG each applied for the ".easy" gTLD with ICANN.

77. EASYGROUP and LFG thereby each agreed to be bound by ICANN's rules and procedures. *See* AGB 4.5 at 98 ("In filing an application . . . the applicant . . . agree[s] to accept the applicability of the Guidebook, the ICANN Objection and Objection Appeal Procedures, and the DRSP Rules.").

78. ICANN's dispute-resolution procedures are intended to benefit all

applicants participating in the gTLD process, including applicants in contention for the same gTLD string. By requiring application-related disputes to be resolved through a single, uniform process, ICANN's procedures provide applicants with a predictable mechanism for resolving objections and competing claims.

79. A motivating purpose of ICANN's dispute resolution framework is to ensure that applicants can rely on the consistent and orderly resolution of application-related disputes through designated dispute-resolution service providers rather than through litigation in multiple jurisdictions applying potentially conflicting standards.

80. Applicants, including EASYGROUP and LFG, further that purpose by agreeing, as a condition of participating in the gTLD application process, to submit application-related disputes to the binding, neutral dispute-resolution procedures established by ICANN.

81. The dispute-resolution framework thus reflects a reciprocal undertaking among applicants, each of whom agrees to resolve application-related disputes through ICANN's designated procedures so that all applicants may receive the benefit of a uniform and predictable system for the adjudication of competing claims.

82. ICANN's procedures require that objections, including objections based on alleged trademark infringement, to applications for gTLDs must be referred to arbitration by one of ICANN's designated dispute resolution service providers. *See id.* at 4.5.2.2; 4.5.3 ("[t]o trigger a dispute resolution proceeding, an objection must be filed . . . directly with the appropriate DRSP for each objection ground.").

83. LFG is an intended beneficiary of EASYGROUP's agreement to comply with ICANN's dispute-resolution procedures because those procedures were adopted to provide applicants, including competing applicants, with a uniform and predictable mechanism for resolving application-related disputes and because the effectiveness of that framework depends on each applicant honoring its commitment to utilize ICANN's designated dispute-resolution process to resolve disputes over gTLD applications.

84. A court must enforce an agreement to arbitrate if: (i) there is a valid agreement to arbitrate; that (ii) encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

85. EASYGROUP's claims that LFG's application for the ".easy" gTLD violate EASYGROUP's trademarks are objections to LFG's application based on EASYGROUP's alleged legal rights and, thus, must be submitted to arbitration conducted by the World Intellectual Property Organization as ICANN's designated DSRP. *See* AGB 4.5.3 at 104.

86. Permitting LFG to enforce EASYGROUP's agreement to arbitrate disputes involving EASYGROUP's alleged legal right to the ".easy" gTLD furthers the objectives of ICANN's dispute resolution framework and the reasonable expectations of both ICANN and participating applicants, who agreed that disputes concerning gTLD applications would be resolved exclusively through the arbitration mechanisms established by ICANN.

87. There exists an actual, ripe, and justiciable controversy between the parties concerning the arbitrability of EASYGROUP's claims.

88. LFG seeks a judicial declaration that EASYGROUP's claims are

subject to the mandatory arbitration provisions set forth in ICANN's dispute resolution framework and that ICANN's dispute resolution framework provides the exclusive means of resolving EASYGROUP's claims.

## COUNT II
## In the Alternative, Declaratory Judgment that LFG's Application Does Not Violate the Lanham Act

89. LFG repeats and realleges the foregoing paragraphs as if set forth fully herein.

90. EASYGROUP has engaged in conduct that gives rise to a real and reasonable apprehension on the part of LFG that it will face an action for injunctive relief and/or damages for trademark infringement under the Lanham Act. *See* 15 U.S.C. § 1114(1); 15 U.S.C. § 1125.

91. EASYGROUP has represented that it is the sole and exclusive owner of the "easy" mark; that LFG's acquisition, use, or sale of ".easy" domains will be deemed confusingly similar; that all use of ".easy" domains by LFG's customers will constitute contributory infringement by LFG; and that it will pursue legal action against LFG globally unless LFG terminates its application for the ".easy" gTLD.

92. LFG denies any wrongdoing. The dispute between LFG and EASYGROUP is substantial, definite, immediately, and not hypothetical.

93. LFG seeks a declaration of non-infringement with respect to its application for the ".easy" gTLD so that it can proceed with its business plans without the continuing risk of litigation by EASYGROUP. The parties have adverse legal interest of sufficient immediacy and reality to warrant the issuance of a

declaratory judgment.

94. LFG's application to ICANN seeking delegation of a ".easy" TLD by ICANN does not infringe any right of EASYGROUP arising under any of its U.S. trademark registrations or alleged rights arising under common law.

95. LFG's proposed operation of a ".easy" gTLD registry would not constitute a trademark use of the word "easy" and thus cannot be considered to violate any cognizable trade or service mark right of EASYGROUP under the Lanham Act.

96. The registration and use of second-level domain names in a ".easy" TLD by prospective registrants thereof does not constitute per se violation of any cognizable trade or service mark right of EASYGROUP under the Lanham Act or under the Anticybersquatting Consumer Protection Act (ACPA) embodied therein.

97. As a neutral provider of registry services, the gTLD registry which LFG intends to operate would be immune from claims arising as a consequence of registration and use of domain names by the individual registrants thereof under 15 USC §1114(2)(D)(iii) ("A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.").

**COUNT III**
**In the Alternative, Tortious Interference**

98. LFG repeats and realleges the foregoing paragraphs as if set forth fully herein.

99. In applying for the ".easy" gTLD, LFG has entered into a contractual and economic relationship with ICANN, with the reasonably probable expectation that its application will be adjudicated through ICANN's procedures, ultimately resulting in a prospective economic benefit: namely, the acquisition of the ".easy" gTLD.

100. EASYGROUP is aware of LFG's application, as demonstrated by EASYGROUP's demand that LFG abandon its application for the ".easy" gTLD.

101. By threatening trademark infringement litigation before proceeding through ICANN's Objection and Objection Appeal Procedures, EASYGROUP is intentionally trying to both end-run the mandatory ICANN procedures and deprive LFG of the opportunity to acquire the ".easy" gTLD by forcing it to abandon its application.

102. EASYGROUP's threats have disrupted LFG's relationship with ICANN by instigating a dispute outside the gTLD dispute resolution process, subverting LFG's expectations for the application process and the agreements that both parties have with ICANN. By engaging with LFG, EASYGROUP is arguably in breach of its agreement with ICANN, but without launching this litigation, LFG will have no way to defuse EASYGROUP's litigation threats (which it has promised to launch no matter what ICANN decides) or bring it back within the auspices of the ICANN process.

103. The resulting uncertainty has generated extensive costs for LFG in terms of planning around and for prospective litigation and further knock-on disruptions to LFG's relationships with potential outside investors and service providers.

104. LFG has economic and contractual relationships with a multiplicity of outside investors and services providers, and it expects to derive a prospective economic advantage from those relationships premised on its acquisition of the ".easy" gTLD, as well as other gTLDs.

105. EASYGROUP is aware of these relationships because LFG has publicly announced its business plan to acquire a variety of gTLDs and make them available for investment opportunities as well as distributing them to service providers.

106. EASYGROUP has again intentionally sought to disrupt these relationships by threatening litigation over the ".easy" gTLD.

107. This has caused the loss of business dealings that LFG would have reasonably expected to secure but for EASYGROUP's interference.

**PRAYER FOR RELIEF**

WHEREFORE, LFG prays that this court grant relief in the form of:

(a) a Declaration that EASYGROUP's claims of trademark infringement must be arbitrated through ICANN's Objections and Appeals Procedure, as provided for in the ICANN AGB;

(b) in the alternative, a Declaration that LFG's application to ICANN does not violate any cognizable trade or service mark right claimed by EASYGROUP relative to such application and that eventual launch and operation of a ".easy" TLD by LFG in accordance with a delegation thereof by ICANN under a registry agreement in this Judicial District does not violate any cognizable trade or service mark right claimed by EASYGROUP;

(c) an Injunction against further communications by EASYGROUP to

LFG or others with the purpose of threatening costly consequences absent the abandonment of a contractual right to evaluation of the application LFG has made to ICANN in this Judicial District;

(d) an Injunction against further communications by EASYGROUP to LFG violating the respective Parties' pre-existing contractual obligation to ICANN prohibiting each of the Parties from engaging in communications for the purpose of resolving "contention sets" outside of the procedures in which both Parties have contracted with ICANN to submit and engage;

(e) An award of actual and compensatory damages be awarded in favor of LFG against EASYGROUP;

(f) That the Court order an award of costs and reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a), or as otherwise permitted by law, incurred by LFG in connection with this action;

(g) That LFG be awarded pre-judgment interest and post-judgment interest on the above damages awards; and

(h) That the Court order an award to LFG of such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

LFG demands trial by jury as to all issues so triable.

Dated: September 21, 2026

Respectfully submitted,

/s/ Stephen G. Larson
Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
Catherine S. Owens (SBN 307626)
*cowens@larsonllp.com*
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
Facsimile: (213) 623-2000

David E. Weslow (*Pro Hac Vice forth-coming*)
Tatiana Sainati (CA SBN 304750)
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
dweslow@wiley.law
tsainati@wiley.law

John Berryhill, Ph.d. (*Pro Hac Vice forth-coming*)
1300 MacDade Blvd., Suite 1
Folsom, PA 19033
Phone: (610)565-5601
john@johnberryhill.com

Attorneys for Plaintiff Link Freedom Group LTD.